## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NOSOUD ALEMARAH,

          Plaintiff,

vs.

Case No.
Hon.

GENERAL MOTORS LLC,
a foreign for profit corporation,
and SUSAN SCHNEIDER,
jointly and severally,

          Defendants'.

_____/

RAYMOND GUZALL III (P60980)
RAYMOND GUZALL III, P.C.
Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122_____/

> There is no other civil action between these parties arising out of the
> same transaction or occurrence as alleged in this complaint pending in
> this court, nor has any such action been previously filed and dismissed or
> transferred after having been assigned to a judge, nor do I know of any
> other civil action, not between these parties, arising out of the same
> transaction or occurrence as alleged in this complaint that is either
> pending or was previously filed and dismissed, transferred, or otherwise
> disposed of after having been assigned to a judge in this Court.

## VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, NOSOUD ALEMARAH, by and through her

attorney, Raymond Guzall III, P.C., by Raymond Guzall III, and for her

Complaint against Defendant GENERAL MOTORS LLC, a foreign

corporation doing business in the State of Michigan, and against

Defendant SUSAN SCHNEIDER states as follows:

## COUNT I

## GENDER DISCRIMINATION

1. Plaintiff NOSOUD ALEMARAH, was employed by the Defendant GENERAL MOTORS LLC a foreign corporation doing business in the State of Michigan, county of Wayne (formerly known as General Motors Corporation).

2. Defendant SUSAN SCHNEIDER was Plaintiff's Manager when she worked for the Defendant Company.

3. Defendant SUSAN SCHNEIDER may be held liable for the acts as stated herein pursuant to *Elezovic v. Bennett*, 274 Mich. App. 1, 10–11, 731 N.W.2d 452, 458 (2007).

4. This Court has jurisdiction pursuant to the diversity statute 28 U.S.C. § 1332 - the Defendant being a foreign corporation, and venue is proper with this Court as Plaintiff worked for the Defendant in Detroit Michigan, and Plaintiff is a resident of Wayne County Michigan.

5. Plaintiff was a contract employee for Defendant General Motors beginning on or about September 7, 2016 and then became employed by General Motors as an employee from approximately April 18, 2017 to October 25, 2017 when her employment was

1

terminated for a claimed policy that did not exist.

6.  In December of 2016 while working for the Defendant Company, Defendant's male employee Vinoth Aganathan told Plaintiff that he "hates working with girls". Plaintiff told him not to call her a girl and that she was a woman. He repeated himself by saying he "hates working with women".

7.  Aganathan became more aggressive at that time and started walking toward Plaintiff and attempted to be physical with her as he raised his hands to attempt to hit Plaintiff and she quickly moved away from him and another resource person named Sampathirao Govindaraju asked Aganathan to leave Plaintiff alone and to not harass her. Plaintiff reported the entire incident with Aganathan to her managers and/or supervisors Susan Schneider, Tracy Little, Diane Beatty, and Pavan Mylavarapu - then the Team Lead. Tracy Little told Plaintiff she would take care of it but that she could not fire him because her contract house (I. T. Consulting Agency) would lose a resource from General Motors. Susan Schneider said the same thing to Plaintiff. Pavan Mylavarapu said to Plaintiff "this guy is crazy" referencing Aganathan."

2

8.    The attached affidavit of Brian Taylor Betts illustrates additional proof
      of the discrimination, retaliation and hostile work environment that
      occurred against Plaintiff and Mr. Betts stated that Plaintiff should not
      have been terminated. (Exhibit 1).

9.    Mr. Betts stated, "Were it not for Nosoud's religion, race and/or
      gender, in my opinion she would not have been suspended or fired."
      (Exhibit 1, page 3).

10.   Mr. Betts also stated, "...the reason given for her termination was not
      a valid reason to terminate her employment." (Exhibit 1, page 4).

11.   Plaintiff was not fired for the reason claimed by the Defendant.

12.   Plaintiff told her Manager Susan Schneider numerous times that the
      male Indian employees do not like to work with women.

13.   Defendant's employees Asfand Khuram and Sravanakumar
      Renduchintan told Plaintiff numerous times when she was employed
      by the Defendant that "you should not be working, as your husband is
      working".

14.   Sravanakumar Renduchinatan told Plaintiff he "does not like working
      with women; and believed a woman's job is to stay at home". Ms.
      Alemarah reported those discriminatory statements of Asfand

3

Khuram and Sravanakumar Renduchintan to her Managers

Defendant Schneider and Raji Chidambaram. Plaintiff was still

continually discriminated against after reporting those incidents.

15. In July 2017 Plaintiff was to travel to the United Kingdom to perform

testing at Vauxhall-General Motors, however both Team Leads Raji

Chidambaram and Satisha Basappa asked Plaintiff not to go as they

told her she was not a good fit because she is a woman with a scarf.

16. In July 2017 Defendant Susan Schneider asked Plaintiff to take new

responsibilities as the team's go to from Account creation/enrollment

process stand point. Defendant Schneider stated that Kiran Bobbala

who was hired to do that assignment had not been doing his job

properly and she needed Plaintiff to support. Plaintiff advised

Defendant Schneider that she would need to have Kiran Bobbala

provide her with general guidance about that assignment. Plaintiff

asked Kiran numerous times to provide her with guidance and he

refused. Plaintiff reported that issue to Defendant Schneider and

Schneider told Plaintiff that Kiran does not like to work with women,

unless you're one of them. For that assignment Plaintiff needed

important data/information to perform her work properly, such as a

4

"environmental checklist". Plaintiff reached out to Anil Kumar from another team numerous times about this Checklist and he refused to communicate with Plaintiff. Plaintiff then advised Defendant Susan Schneider and she did not take any actions. Plaintiff spoke to other Defendant Company female employees (non-Indian - Shyla Hasal and Hamida Rahman) and they both told Plaintiff that they had experienced the same issue with Anil Kumar.

17. Ms. Alemarah told Defendant Schneider she is forced to listen to racial slurs about her gender, race and religion, and she was disrespected and intimidated because of her gender, race and religion since she started working with her (Schneider's) team. Plaintiff told Defendant Schneider that the discrimination and hostile work environment was affecting her mentally. Schneider nodded her head and said "Yes". Schneider also stated to Plaintiff, "a lot of them come to this country and are still narrow-minded and do not open-up to this culture".

18. During the time that Plaintiff was a contract employee with the Defendant Company, Plaintiff told her Manager Defendant Susan Schneider that she was being discriminated against because of her

5

gender and race and that Plaintiff would like to leave her
(Schneider's) team. Schneider told Plaintiff that she did not want to
lose her on her team and that Plaintiff was an asset to the team.
Plaintiff was thereafter hired as an employee by the Defendant
Company.

19. Brian Betts stated "From her own team, Nosoud has also received
consistent praise. Susan Schneider, the current Manager and Raji
Chidambara, a Lead, have both acknowledged Nosoud's value as an
onboarding trainer." (Exhibit 1, page 2).

20. During Plaintiff's time working as an employee of the Defendant, she
told Defendant's Manager Susan Schneider that employees
Kirthinidhi Bandak, Karthick Malayaandi, Vinoth Aganathan, Kiran
Bobbala and Asfand Khuram do not like working with women.

21. In September 2017 - Kiran Bobbala refused to work with Ms.
Alemarah on an assignment, she asked him why was he refusing, he
said "why should I work with a girl with a head towel on her head".

22. Ms. Alemarah continually complained throughout her employment
with the Defendant Company to her Manager Tracy Little and her
Manager Susan Schneider that she was being discriminated against

6

based upon her gender, race, national origin and religion, and the
Defendants' failed to prevent the discrimination and they allowed that
discrimination against Plaintiff to occur throughout Plaintiff's
employment.

23. On September 26, 2017 Ms. Alemarah again complained to Manager
Susan Schneider that she was being discriminated against based
upon her gender, race, national origin and religion and that she
needed to escalate it to leadership because the discrimination and
hostile work environment was affecting her work and that she was
emotionally drained from having to constantly deal with the
discrimination, and Defendant Schneider's face turned red at that
point and she said Plaintiff would get over it and that GM (Defendant
Company) would not take any actions against the Indian employees.
That complaint by Plaintiff lead to the retaliation against her that
followed shortly thereafter.

24. On October 9, 2017 Defendant Manager Susan Schneider
approached Ms. Alemarah and made up policies that did not exist
and attempted to hold her accountable for those non-existent
policies, but once Ms. Alemarah proved to her that other employees

7

were doing the same things she was doing on the job and that there was no such policy, Schneider told Alemarah to forget about it and then walked away without any discipline to Ms. Alemarah. Ms. Alemarah was then suspended on October 17, 2017.

25.    Brian Betts stated, "On Wednesday, October 18, 2017 I learned from Brian Presser that Nosoud had been placed on 'Suspension' by Susan. The Director above Susan is Raj Surti and he is of Indian race. I was shocked to learn that this decision was alleged to have been motivated by the same so-called mistake Nosoud was initially punished for nearly a week prior." (Exhibit 1, page 3).

"Logically, one must conclude, and I did conclude that if Susan placed Nosoud on suspension for an unwritten violation, then this was retaliation and/or discrimination." (Exhibit 1, page 3).

26.    On October 25, 2017 Plaintiff's employment was illegally terminated.

27.    The Defendants' have an illegal pattern and practice of discriminating against female employees.

28.    Brian Betts stated "Nosoud spoke with me about how she was dismissed by her male counterparts in many discussions due to her being a woman. I have witnessed this dynamic personally—male

8

testers on the "Validation" team dismissed the opinions/concerns of

female team members with derisive comments such as 'you are just

a silly girl'." (Exhibit 1, page 1).

29.   When Def. Schneider assigned Plaintiff work, for example: training

new and existing inexperienced contractors - (then Team Leads),

Raji Chidambaram and Statisha Basappa interfered with Plaintiff's

work assignments by telling those contractors to avoid working with

Plaintiff. Employee Brian Presser drafted a written statement - that

Raji asked to not work with Plaintiff, and Plaintiff showed that written

statement to Defendant Schneider and no actions were taken.

30.   Defendant Company employees Kirthinidhi Bandak and Karthick

Malayaandi refused to work with Plaintiff on assigned assignments,

and she asked them why and both stated they don't like to work with

Women. Plaintiff reported that information to her Team Leads and to

Defendant Susan Schneider but nothing was done.

31.   Disparate treatment is evident from the facts plead herein as Plaintiff

being a female employee was a motivating factor in the adverse

employment actions taken against Plaintiff and Plaintiff was

terminated under circumstances that give rise to an inference of

9

unlawful discrimination.

32. The Defendants' claim they took adverse employment actions
    against Plaintiff and terminated Plaintiff for legitimate reasons thus
    presenting a mixed motive claim. See *White v Baxter Healthcare
    Corp*, 533 F3d 381, 401 (CA 6 2008).

33. Plaintiff was treated differently by Defendants' because of her
    gender, in violation of the Michigan Elliott Larsen Civil Rights Act,
    MCL 37.2101, et seq..

34. Plaintiff's employment was unlawfully terminated by Defendants'
    because of her gender, in violation of the Michigan Elliott Larsen Civil
    Rights Act, MCL 37.2101, et seq.

35. Plaintiff would not have been harassed, suspended or terminated if
    she was a male employee.

36. Male teammates of Ms. Alemarah consistently violated General
    Motor's policies and yet were not disciplined, but Ms. Alemarah was
    disciplined when she had not violated any policy.

37. As a result of Defendant's illegal acts as outlined and stated herein,
    Plaintiff has been damaged in violation of the afore-stated causes of
    action.

38.    The wrongful and illegal actions of Defendants' have damaged
        Plaintiff, and continue to damage Plaintiff, including but not limited to
        past, current and future wage loss, loss of benefits, emotional
        damages among other damages as stated herein, and to be included
        within this Count, and damages including but not limited to costs,
        interest and attorney fees.

## COUNT II

### DISCRIMINATION BASED UPON PLAINTIFF'S RELIGION

39.    Plaintiff re-alleges and incorporates Paragraphs 1 through 38 as
        though set forth in full word for word and paragraph for paragraph.

40.    Brian Betts confirmed that Plaintiff was discriminated against based
        upon her religion as he stated "There is also a thinly veiled contempt
        for the religion of Islam (which is Nosoud's religion and was known to
        the "testers" as I heard them reference Nosoud and her religion)
        coming from many of the testers (who were mostly of Hindu religion
        and were mostly of Indian race and were male – being approximately
        95% of the team) on team Validation as well.  The testers also made
        negative comments about Nosoud wearing her religious headwear."
        (Exhibit 1, page 1).

11

41.    When a few direct hire positions became available at the Defendant
       Company, employees Robin Ash, Vani Kaliyugavaradan and Team
       Leads (All Indians) approached other contractors to apply for the
       direct hire positions except for Plaintiff. Plaintiff asked Robin Ash
       and Vani Kaliyugavaradan why she was not givin an opportunity like
       other contractors. They both told Plaintiff she was not good fit to be
       hired direct at General Motors because of her head scarf.

42.    Defendants' were aware that Plaintiff was being discriminated against
       because of her religion and failed to prevent the discrimination and
       they allowed that discrimination against Plaintiff to occur throughout
       Plaintiff's employment.

43.    Defendant Company Manager Raji Chidambaram stated to Ms.
       Alemarah numerous times that "you will not get anywhere in this
       company because you wear a head scarf".

44.    Defendant Company employees Kirthinidhi Bandak and Karthick
       Malayaandi refused to work with Plaintiff on assigned assignments,
       and she asked why, and both stated they don't like to work with
       someone with a head scarf on her head. Plaintiff reported that
       information to her Team Leads and to Defendant Susan Schneider

12

but nothing was done.

45.     Defendant Company employees Kirthinidhi Bandak and Karthick
        Malayaandi made numerous statements to Plaintiff about how
        President Donald Trump wants to deport Muslims from the United
        States, and both Banadak and Malayaandi would tell Plaintiff when it
        was her turn to be deported.

46.     In October 2017 - Defendant Schneider questioned Ms. Alemarah
        about her head scarf after over a year working with her. She said to
        her "how can you wear that", and "why do you wear that" referring to
        her head scarf. Schneider also told her, "if you (Ms. Alemarah) were
        not living in Dearborn, then you would not be a good fit in other
        areas."

47.     In October 2017- Plaintiff spoke to Abdul Bazzi (GM Director) about
        Susan Schneider/ Rajesh Surti, Raji Chidambaram and Satisha and
        Plaintiff complained to him that those employees were discriminating
        against her because she is a female employee and wears a
        headdress due to her religion/faith. Mr. Bazzi told Plaintiff that he
        would take care of it. Plaintiff asked Mr. Bazzi if she could follow-up
        with him regarding the issue and he told her yes. Plaintiff called Mr.

13

Bazzi many times to follow up and he did not respond to her calls.

48. Plaintiff was treated differently by Defendants' because of her religion, in violation of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, et seq..

49. Plaintiff's employment was unlawfully terminated by Defendants' because of her religion, in violation of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, et seq.

50. Plaintiff would not have been harassed, suspended or terminated if she was not of Muslim - Islam faith/religion.

## COUNT III

## DISCRIMINATION BASED UPON PLAINTIFF'S RACE

51. Plaintiff re-alleges and incorporates Paragraphs 1 through 50 as though set forth in full word for word and paragraph for paragraph.

52. Plaintiff was born in Iraq and did not move to the United States until she was in middle school, at approximately 13 years of age. In August of 2000 Plaintiff became a United States citizen.

53. Plaintiff's race is Iraqui Arabic.

54. Indian teammates of Ms. Alemarah consistently violated Defendant General Motor's policies and yet were not disciplined, but Ms.

14

Alemarah was disciplined.

55.    Plaintiff was assigned a much heavier work load than the Indian
       employees who worked for the Defendant Company.

56.    Plaintiff was excluded from important meetings/training/ assignments
       that only employees of Indian race were selected for because of
       Plaintiff's race - being Iraqi Arabic.

57.    In approximately May or June of 2017 Defendant Schneider told
       team leads Raji Chidambaram and Satisha Basappa that she was
       going to promote Plaintiff to an automation team lead position.  Raji
       and Satisha told Plaintiff that the employees did not want her as a
       team lead because she was not one of them - being not of the same
       religion and race.  Plaintiff then discussed that issue with Schneider
       and told Schneider that she spoke to Raji and Satisha and that they
       told her that the employees did not want her as a team lead because
       she is arabic and of the Muslim faith/religion.  Schneider then told
       Plaintiff that she was not going to be promoted.

58.    In August of 2017- Project Scrum Master Harinadh Kaza from a
       Defendant Company project approached Plaintiff and asked her to
       attend an important meeting and told her that he needed someone

15

from Plaintiff's team to be present (as per Mr. Kaza, Raji and
Defendant Schneider had been skipping meetings), and so Plaintiff
attended that meeting. Raji Chidambaram asked Plaintiff why she
was in that meeting. Plaintiff explained why and Raji then told her to
leave the meeting. Plaintiff reported that incident to Defendant
Susan Schneider and she failed to take action or provide an
explanation as to why Plaintiff was removed from that important
meeting.

59. Plaintiff was belittled by Indian managers, supervisors and
employees because of her race.

60. Plaintiff was constantly misguided by the Defendant Company's
Indian team leads/ and teammates with the wrong data/information to
intentionally misguide her so she would perform the wrong work.
Plaintiff reported those issues to Defendant Susan Schneider many
times but no actions were taken by Schneider or the Defendant
Company.

61. Raji Chidambaram told Plaintiff that Raji did not want Plaintiff to be
promoted because Raji wanted a person of Indian descent to be
promoted, and not Plaintiff because Plaintiff was of Arabic race and

16

because of Plaintiff's religion/faith.

62. On or about August 15, 2017 an Indian male teammate of Plaintiff (Sandeep Sundriyal) told Plaintiff that Raji Chidambaram asked him to use his GM (Defendant General Motors) laptop and login credentials to access JIRA Application (GM software application) and modified Plaintiff's work (a defect ticket) under his credentials so it would show the Indian male teammate modified it with incorrect/false details in an attempt to make Plaintiff look bad. Plaintiff reported that issue to Defendant Susan Schneider and she acknowledged that Raji violated a General Motors' policy and Raji should be fired however Raji was not disciplined or fired. Plaintiff asked Defendant Schneider why Raji was not disciplined or fired and Schneider gave Plaintiff no explanation as to why Raji was not disciplined or fired.

63. Plaintiff was treated differently by Defendants' because of her race, in violation of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, et seq..

64. Plaintiff's employment was unlawfully terminated by Defendants' because of her race, in violation of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, et seq.

17

65.  Plaintiff would not have been harassed, suspended or terminated if her race was not Arabic.

## COUNT IV

## HOSTILE WORK ENVIRONMENT

66.  Plaintiff re-alleges and incorporates Paragraphs 1 through 65 as though set forth in full word for word and paragraph for paragraph.

67.  Mr. Bett's stated, "There was an abusive attitude by the testers towards both women and people of the Islamic faith which created an abusive and hostile work environment for Nosoud Alemarah." (Exhibit 1, Page 1).

68.  Mr. Betts explained the hostile work environment as to Plaintiff. (Exhibit 1).

69.  The discrimination and/or retaliation against Plaintiff occurred almost on a daily basis and created a hostile work environment for Ms. Alemarah.

70.  The discrimination and hostile work environment affected Plaintiff's work and she was emotionally drained from having to constantly deal with the discrimination and work in that hostile environment.

71.  Defendants' and their employees took every opportunity to make

18

Plaintiff's life as an employee unpleasant because of her gender, race and religion.

72. Defendants' employees continuously attempted to sabotage Plaintiff's work by giving her false information/wrong data, and Plaintiff reported to Defendant Schneider that the Indian employees kept giving her false information/wrong data to prevent Plaintiff from being promoted and/or attempts to set Plaintiff up to be fired, and Schneider did nothing about those complaints of Plaintiff.

73. Mr. Betts updated his superior as to Plaintiff and told him that Plaintiff was removed as a trainer, "In my update Email, I informed Abdul that I was blocked on the Onboarding deliverable I had on the CEI Mobile App Issues list because Nosoud had been removed as a trainer. I had a commitment from Abdul that the people our breakaway team listed as responsible parties would remain so--and I wanted him to be aware that this was already being undermined by the QA Validation Team leadership." (Exhibit 1, page 3).

74. Plaintiff told Defendant Schneider she was forced to listen to racial slurs, disrespected and intimidated from the time she began working with her (Schneider's) team and told Defendant Schneider that the

19

discrimination and hostile work environment was affecting her

mentally, and Schneider nodded her head and said "Yes".

75. Defendants' failed to stop the discrimination and hostile work

environment that Plaintiff consistently complained of to the

Defendants'.

76. Mr. Betts stated, "Another aspect of the communication from Susan

and Raji to Nosoud was hostile in nature. Nosoud was publicly

admonished and her abilities impugned, which is not a

typical/professional way of delivering feedback." (Exhibit 1, page 3).

## COUNT V

## RETALIATION

77. Plaintiff re-alleges and incorporates Paragraphs 1 through 76 as

though set forth in full word for word and paragraph for paragraph.

78. On September 26, 2017 Ms. Alemarah again complained to Manager

Susan Schneider that she was being discriminated against based

upon her gender, race, national origin and religion and that she

needed to escalate it to leadership because the discrimination and

hostile work environment was affecting her work and that she was

emotionally drained from having to constantly deal with the

20

discrimination, and Defendant Schneider's face turned red at that

point and she said Plaintiff would get over it and that GM (Defendant

Company) would not take any actions against the Indian employees.

That complaint by Plaintiff lead to the retaliation against her that

followed shortly thereafter. (See paragraphs 22 and 23 herein).

79.  On October 25, 2017 Plaintiff's employment was terminated by the

Defendants'.

80.  Within 30 days of Plaintiff asking her Supervisor Defendant

Schneider to escalate her discrimination complaints to leadership

(Management above Defendant Schneider), Plaintiff's employment

was terminated by the Defendants'.

81.  Mr. Bett's stated: "Nosoud told me in September of 2017 that she

made complaints to Management (Susan Schneider) that she was

being discriminated against because of her race/religion and gender,

and so I also came to the opinion and concluded that if Nosoud had

not made those complaints she would not have been fired, because

the reason given for her termination was not a valid reason to

terminate her employment." (Exhibit 1, page 4).

82.  Plaintiff's activities at work were scrutinized more carefully than other

21

Defendant Company employees and those similarly situated employees.

83. Plaintiff was retaliated against (suspended and then fired) by the Defendants' because she made discrimination complaints to the Defendants' and because she requested that her discrimination complaints be escalated to leadership.

84. Ms. Alemarah earned approximately $105,000.00 per year working for the Defendant Company and was provided full medical coverage, dental, incentive pay, a 401k plan and other benefits.

85. As a result of Defendant's illegal acts as outlined and stated herein, Plaintiff has been greatly damaged in violation of the afore-stated causes of action in that she has suffered and will be forced to suffer great economic and emotional harm, a loss of earning capacity, salary loss, emotional injuries with pain and suffering, including but not limited to emotional distress and mental anguish, all of which she has suffered as a result of the treatment by Defendants' named herein, and from which Plaintiff currently suffers and can reasonably be expected to suffer from for the rest of her life.

WHEREFORE, your Plaintiff prays for judgment against Defendant,

GENERAL MOTORS LLC, a foreign corporation doing business in the

State of Michigan, and Defendant SUSAN SCHNEIDER in an amount in

excess of $75,000 including but no limited to past, current and future

damages and wage loss, 401k loss and other benefits as well as emotional

damages, costs, interest and attorney fees for the illegal acts of

Defendants' as stated herein, and all other damages afforded by law to

Plaintiff. Plaintiff further requests all other relief the Court deems

appropriate in her favor as afforded by law.

The facts as stated within this Verified Complaint are true to the best

of my knowledge, information and belief, and I will testify in accord with the

facts herein and I declare under penalty of perjury under the laws of the

United States of America that the foregoing Verified Complaint is true and

correct.

NOSOUD ALEMARAH

Subscribed and sworn to before me
this _30_ day of _May_, 2018.

Raymond Guzall III
Notary Public Oakland County, MI
My commission expires: 2-6-2021

**JURY DEMAND**

Plaintiff demands trial by jury in this matter.

23

Respectfully submitted,

RAYMOND GUZALL III, P.C.
/s/ Raymond Guzall III
RAYMOND GUZALL III (P60980)
Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122

24

# EXHBIT 1

## AFFIDAVIT OF BRIAN TAYLOR BETTS

I, Brian Taylor Betts, make the following statements and general affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of my knowledge:

I am over the age of 18 and I am a resident of the State of Michigan. I have personal knowledge of the facts herein and if called as a witness at trial, will testify competently to the facts herein.

I began working with Nosoud Alemarah on August 1, 2017 at General Motors in Detroit Michigan, when I joined the Mobile App Development Team under the CEI organization.

While Nosoud and I were on different teams, my background in QA and her earnest attitude led to conversations that built my respect for her own knowledge in QA best practices, as well as the current problems facing the Global Validation Team.

First and foremost, I want to provide my own observations on how Nosoud was treated by her teammates. Nosoud spoke with me about how she was dismissed by her male counterparts in many discussions due to her being a woman. I have witnessed this dynamic personally—male testers on the "Validation" team dismissed the opinions/concerns of female team members with derisive comments such as 'you are just a silly girl'.

There is also a thinly veiled contempt for the religion of Islam (which is Nosoud's religion and was known to the "testers" as I heard them reference Nosoud and her religion) coming from many of the testers (who were mostly Hindu religion and were mostly of Indian race and were male – being approximately 95% of the team) on team Validation as well. The testers also made negative comments about Nosoud wearing her religious headwear. Also, the massacre that occurred in Rohingya, Myanmar was the source of jokes/laughing in a conversation I overheard between testers.

There was an abusive attitude by the testers towards both women and people of the Islamic faith which created an abusive and hostile work environment for Nosoud Alemarah.

In addition to Nosoud, I worked closely with Brian Presser, Kim Shilling and Nicole Watkins to investigate gaps in process, invalid test cases and a host of other fundamental issues plaguing the Global Validation Team.

After collecting a clear list of problems, along with attainable solutions, Brian, Kim, Nicole and myself went before the current CEI Director, Abdul Bazzi, to present our findings. In our minds, this was the first of a typical internal 'whistleblower' action. Abdul

1

listened to our report and asked our 'breakaway' team to transfer our problem statements and solutions to a list, which he would officially endorse and distribute to the various team managers.

A few days after Abdul sent the list of problems/solutions out in the "CEI Mobile App Issues", Nosoud came to me with concerning news: She had her duties as an onboarding trainer removed.

Aside from having a genuine concern for Nosoud as a valued coworker, I can say that this development was of immediate concern to me because Nosoud was listed as a responsible party on the "CEI Mobile App Issues" list. I was depending on her position and authority to help implement many of the onboarding documents she had already spent time (outside of work) to create.

It is my understanding that Nosoud lost her duties as the onboarding trainer on the grounds that she marked a single-step test case as passed from the 'header' in the ALM test software. This is an important issue and I will break the context of this down into two segments.

First, it should be known that one of the issues our breakaway team presented to Abdul was the matter of test cases being mass-passed or cancelled just prior to deadlines for testing to end. For the layman, this can be thought of as an ethical violation akin to an editor who claims to have read dozens of pages, which he did not. As a QA tester, passing many test cases with timestamps that are on top of each other should throw a red flag. This means that a tester has claimed they tested dozens of steps within the same second--not possible by human standards.

On the subject of Nosoud's character, it should be known that other Product Owners outside of myself can attest to Nosoud's work ethic and value. David MacGuidwin, Neha Kendale and Jason Cassar would have positive things to say about Nosoud's performance. We appreciate that Nosoud asks questions to clarify requirements, and shows a diligent determination to engage other teams to get test vehicles, accounts and other artifacts.

Technically, Nosoud has been performing many roles that were not initially under her implicit umbrella of responsiblity. Again, due to her earnest nature, Nosoud pursued solutions for problems as she saw them crop up.

From her own team, Nosoud has also received consistent praise. Susan Schneider, the current Manager and Raji Chidambara, a Lead, have both acknowledged Nosoud's value as an onboarding trainer.

With all of the onboaring documents Nosoud has written; with all the praise she has

2

received previously, and given the claimed reason for termination, Nosoud should not have been fired.

Nosoud forwarded a few example Emails of the praise/feedback she had received, as well as examples of when she was ignored or otherwise undermined by Susan and Raji.

While trying to avoid involvement in personal matters, I kept in mind that objectivity was the best path for next steps. As someone who is a recent hire on a separate team, I didn't feel that there was any direct action I could take to help Nosoud resolve her problem. Considering I had established a bridge of communication with our trusted leader, Abdul, I felt the best course of action was to include a note on Nosoud's behalf in my weekly update to him.

In my update Email, I informed Abdul that I was blocked on the Onboarding deliverable I had on the CEI Mobile App Issues list because Nosoud had been removed as a trainer. I had a commitment from Abdul that the people our breakaway team listed as responsible parties would remain so--and I wanted him to be aware that this was already being undermined by the QA Validation Team leadership.

On Wednesday, October 18, 2017 I learned from Brian Presser that Nosoud had been placed on 'Suspension' by Susan. The Director above Susan is Raj Surti and he is of Indian race. I was shocked to learn that this decision was alleged to have been motivated by the same so-called mistake Nosoud was initially punished for nearly a week prior.

Logically, one must conclude, and I did conclude that if Susan placed Nosoud on suspension for an unwritten violation, then this was retaliation and/or discrimination.

Through virtue of identifying fundamental flaws in the QA Validation team to Abdul, the current QA leadership's abilities were implicitly impugned. Taking this into consideration regarding the subsequent punitive measures taken against Nosoud, a discriminatory and/or retaliatory motivation seems clear. Again, consider that before Friday, the 13th of October, Nosoud's track record with her team and others was clean.

Another aspect of the communication from Susan and Raji to Nosoud was hostile in nature. Nosoud was publicly admonished and her abilities impugned, which is not a typical/professional way of delivering feedback. In short, Nosoud was told she didn't know how to do her job, which is a ludicrous claim if based on a single mistake in passing single-step test cases.

I cannot, frankly, believe that I have had to write this affidavit--I don't believe this matter should have ever escalated to a suspension in the first place. Were it not for Nosoud's religion, race and/or gender, in my opinion she would not have been suspended or fired.

3

Also Nosoud told me in September of 2017 that she made complaints to Management (Susan Schneider) that she was being discriminated against because of her race/religion and gender, and so I also came to the opinion and concluded that if Nosoud had not made those complaints she would not have been fired, because the reason given for her termination was not a valid reason to terminate her employment. I have authored this statement to be used as Nosoud see's fit. I am willing to provide additional testimony to her capabilities and to the statements I have made in this affidavit. This affidavit is 4 pages in length.

Brian Taylor Betts

Subscribed and sworn to before me
this 20th day of November, 2017.

Notary Public Wayne County, MI

My commission expires: 12-20-2019

CATHERINE L THOMAS
Notary Public – State of Michigan
County of Wayne
My Commission Expires Dec 20, 2019
Acting in the County of Wayne

4